**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JEFFREY STELLO,<br>            Plaintiff,<br><br>         v.<br><br>ARK ENGINEERING & TECHNICAL<br>SERVICES, INC., ARK FIELD<br>SERVICES, LLC, ROBERT ALLEN<br>and MARY ALLEN,<br>            Defendants. | )<br>)<br>)<br>) Civil Action No. 15-10590-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

July 14, 2015

Saris, U.S.D.J.

Plaintiff Jeffrey Stello was fired from his position as CEO of Ark Engineering & Technical Services, Inc. and ARK Field Services, LLC (collectively "Ark"). Stello responded by filing this lawsuit, raising claims for (1) breach of contract; (2) wrongful termination in violation of public policy; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with contract; and (5) a declaratory judgment. Defendants now move to dismiss Counts 2-4 under Federal Rule of Civil Procedure 12(b)(6), which Stello opposes. (Docket Nos. 9, 12). Defendants' Motion to Dismiss Counts 2-4 of Plaintiff's Complaint (Docket No. 9) is **ALLOWED IN PART AND DENIED IN PART**. Counts 2 and 4 of Stello's complaint are **DISMISSED**. Defendants'

1

motion to dismiss Count 3 is **DENIED**.

**A. Wrongful Termination in Violation of Public Policy (Count 2)**

Stello's wrongful termination claim (Count 2) fails because he was not an "at-will" employee. A claim for wrongful termination in violation of public policy is "an exception to the general rule that an employer may terminate an <u>at-will</u> employee at any time with or without cause." <u>King v. Driscoll</u>, 638 N.E.2d 488, 492 (Mass. 1994) (emphasis added). For this reason, only at-will employees can allege that they were wrongfully terminated in violation of public policy. <u>See</u> <u>Willitts v. Roman Catholic Archbishop of Boston</u>, 481 N.E.2d 475, 479 (Mass. 1991) ("The common law doctrine granting an employee a cause of action for wrongful discharge, if the reason for the discharge is contrary to public policy, is limited to at-will employees."); <u>Locke v. US Airways, Inc.</u>, 2013 WL 5441725, at *3 (D. Mass. 2013) ("Massachusetts law is clear that this cause of action is available only to 'at-will' employees."). Stello has admitted that he was not an "at will" employee because his contract provided severance unless he was terminated for cause. (Docket No. 12:8 n.1, 14); <u>see also</u> Williston on Contracts § 54:40 (4th ed. 2010) (explaining that employees who cannot be terminated without just cause are not at-will employees). Therefore, the

Court will dismiss Stello's wrongful termination claim.[1]

**B. Implied Covenant of Good Faith and Fair Dealing (Count 3)**

Defendants next argue that Stello's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because his severance package is not compensation for past services performed. Defendants also argue that the good faith and fair dealing claim is duplicative of Stello's breach of contract claim (Count 1). Both of these arguments fail.

To begin with, the implied covenant of good faith and fair dealing is broad enough to cover Defendants' alleged refusal to pay severance to Stello in bad faith. Under Massachusetts law, the implied covenant of good faith and fair dealing provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991) (quotation marks omitted). In the employment context, the implied covenant of good faith and fair dealing "prevent[s] an employer from being unjustly enriched by depriving the employee of money that he had fairly earned and legitimately expected." King, 673 N.E.2d at

---

[1] The Court raised this issue at the hearing, providing notice and an opportunity for the parties to respond. See Cepero-Rivera v. Fagundo, 414 F.3d 124, 130 (1st Cir. 2005) (explaining that sua sponte dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond).

862. Employers cannot, for example, deprive sales agents of a commission by "terminating the contractual relationship when the agent is on the brink of successfully completing the sale." Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1257 (Mass. 1977). Similarly, in Williams v. B & K Medical Systems, Inc., 732 N.E.2d 300 (Mass. App. Ct. 2000), an employer accused the plaintiff of wrongdoing, demanded the plaintiff's immediate resignation, and threatened to ruin his career. Id. at 302. More to the point, the employer also offered only two and a half months of severance, even though plaintiff's contract called for twelve months notice with full salary and benefits unless he was terminated for cause. Id. The Court found that these actions constituted a breach of the implied covenant of good faith and fair dealing. Id. at 305.

Under this caselaw, Stello's complaint states a valid claim for breach of the implied covenant of good faith and fair dealing. According to the allegations (which are hotly disputed), soon after coming aboard as CEO, Stello learned that Ark was about to sink. Namely, there was a flood of registry, licensing, and tax laws that Ark was ignoring in numerous states where it was operating. When Stello refused to stay silent about these issues, Defendants terminated him. As in Williams, Stello also says that Defendants falsely claimed that the termination was for cause, which was a mere ploy to avoid paying his severance

4

package. The Court recognizes that the severance package was not a wage or bonus directly tied to services Stello provided to Ark. But the complaint nevertheless alleges that Ark dishonestly deprived Stello of money that was "fairly earned and legitimately expected" under the contract. King, 673 N.E.2d at 862. As a result, the Court finds that Stello has stated a viable claim for breach of the implied covenant of good faith and fair dealing.

**C. Tortious Interference (Count 4)**

Finally, Defendants Robert and Mary Allen argue that Stello's tortious interference claim falls short because they are Ark's alter ego. Therefore, the Allens say that they were parties to the contract and cannot be held liable for tortious interference. See Harrison v. NetCentric Corp., 744 N.E.2d 622, 632 (Mass. 2001) ("A party to the contract cannot be held liable for intentional interference."). The Court agrees. Under Massachusetts law, corporations and individual defendants are "indistinguishable" when the individuals are the corporation's "sole stockholder." Id.; see also Schinkel v. Maxi-Holding, Inc., 565 N.E.2d 1219, 1226 (Mass. App. Ct. 1991) (explaining that a CEO might be "so closely identified with the corporation itself, and with its policies, that he should not be treated as a third person in relation to corporate contracts"); Terespolsky v. Law Offices of Stephanie K. Meilman, P.C., 2004 WL 333606, at *6 (Mass. Sup. Ct. Feb. 23, 2004) (rejecting tortious interference

claim where defendant was President, Clerk, Treasurer, sole director, owner, and sole shareholder and maintained control over all aspects of the operation). Here, Stello's complaint alleges that the Allens collectively own 100% of the shares in Ark, serve as its directors and officers, and are the sole members of ARK Field Services. The Allens are indistinguishable from Ark itself. As a result, they cannot be liable for intentional interference.

## IV. ORDER

Defendants' Motion to Dismiss Counts 2-4 of Plaintiff's Complaint (Docket No. 9) is **ALLOWED IN PART AND DENIED IN PART**. Counts 2 and 4 of Stello's complaint are **DISMISSED**. Defendant's motion to dismiss Count 3 is **DENIED**.

       /s/ PATTI B. SARIS
       Patti B. Saris
       Chief United States District Judge